IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

JOSEPH E. RAMAEKERS,

     Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

     Defendant.

No. C15-3004

REPORT AND RECOMMENDATION

---

**TABLE OF CONTENTS**

I.    *INTRODUCTION* ........................................ 2

II.   *PROCEDURAL BACKGROUND* ........................... 2

III.  *PRINCIPLES OF REVIEW* ............................... 3

IV.  *FACTS* .............................................. 5
    *A.  Ramaekers' Education and Employment Background* .......... 5
    *B.  Administrative Hearing Testimony* ...................... 5
        *1.  Ramaekers' Testimony* ......................... 5
        *2.  Vocational Expert's Testimony* ................... 6
    *C.  Ramaekers' Medical History* ......................... 7

V.   *CONCLUSIONS OF LAW* ............................... 10
    *A.  ALJ's Disability Determination* ...................... 10
    *B.  Objections Raised By Claimant* ...................... 13
        *1.  Credibility Determination* ...................... 13
        *2.  RFC Assessment* ............................ 19
    *C.  Reversal or Remand* ............................. 21

VI.  *CONCLUSION* ...................................... 22

VII. *RECOMMENDATION* ................................ 22

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Joseph E. Ramaekers on January 12, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Ramaekers asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Ramaekers requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On January 11, 2012, Ramaekers applied for disability insurance benefits. In his application, Ramaekers alleged an inability to work since September 2, 2010 due to status post fusion of the cervical spine and deep vein thrombosis ("DVT") of the lower right extremity.[1] Ramaekers' application was denied on March 22, 2012. On May 11, 2012, his application was denied on reconsideration. On August 13, 2013, Ramaekers appeared in person with a non-attorney representative, Nancy Withers, before Administrative Law Judge ("ALJ") Julie K. Bruntz. Ramaekers, his wife, Kim Ramaekers, and vocational expert Vanessa May testified at the hearing. In a decision dated September 24, 2013, the ALJ denied Ramaekers' claim. The ALJ determined that Ramaekers was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Ramaekers appealed the ALJ's decision. On November 12, 2014, the Appeals Council denied Ramaekers' request for review. Consequently, the ALJ's September 24, 2013 decision was adopted as the Commissioner's final decision.

---

[1] At the administrative hearing, Ramaekers amended his disability onset date to January 3, 2011. *See* Administrative Record at 36-37; *see also id*. at 13 (ALJ's decision noting the amended disability onset date of January 3, 2011).

On January 12, 2015, Ramaekers filed this action for judicial review. The Commissioner filed an Answer on April 10, 2015. On May 20, 2015, Ramaekers filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On July 13, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 2, 2015, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence."

*Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as

4

substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Ramaekers' Education and Employment Background

Ramaekers was born in 1960. He is a high school graduate. In the past, Ramaekers worked as a machinist, dry cleaner, and assembler.

### B. Administrative Hearing Testimony

#### 1. Ramaekers' Testimony

At the administrative hearing, Withers, Ramaekers' non-attorney representative, asked Ramaekers why he believed he was unable to work. Ramaekers explained that "I can't walk. Standing is just nearly impossible for any length of time. . . . If I don't have a recliner to put my leg up and lay as flat as that recliner will, either my legs start to go into a cramp or they are just in serious pain. I got to have the leg up." Ramaekers estimated that he could walk no farther than one block.

Ramaekers also explained that he has difficulties with headaches. The headaches started after he had neck surgery in 2008. Prior to blood clot issues, he took ibuprofen to treat the headaches. However, since having difficulties with blood clots in his leg, he stated that he no longer takes any pain relief medication to treat his headaches. According to Ramaekers, sometimes the headaches go away in an hour, but other times they last all day.

Ramaekers also testified that he suffers from depression and anxiety. However, he stated that medication "keeps me good."[2] Ramaekers also indicated that he has difficulty

---

[2] Administrative Record at 41.

sleeping due to neck and leg pain. He estimated that he gets about four hours of sleep per night.

The ALJ also questioned Ramaekers. The ALJ inquired about Ramaekers' typical day:

> Q: Can you tell me what a typical day is like for you?
> A: Well, I'll get up when I get up. I mean, I could get up at, well, like today I got up at 6:00 because I knew we had to be down here. Typically, it'll be 10:00 or 11:00. I'll let the dogs out of the house, and go plop in the recliner and put my back up. I'll get the mail. I don't make any lunch or breakfast. I want [(sic)] for Kim to come home and she makes the evening meal, and that's pretty much what I eat.

(Administrative Record at 45.)

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided the vocational expert with a hypothetical for an individual who is able to:

> occasionally lift and carry 20 pounds and can frequently lift and carry ten pounds. This individual could stand or walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day. His ability to push and pull, including the operation of hand and foot controls, would be unlimited, except for his lower left extremity he could only occasionally operate foot controls.
>
> He could occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds. Occasionally balance, stoop, kneel, crouch and crawl. He would need to avoid concentrated exposure to hazards, such as heights and dangerous machinery, as well as vibrations.

(Administrative Record at 50-51.) The vocational expert testified that under such limitations, Ramaekers could not perform his past relevant work, but could perform the

following unskilled light jobs: (1) information clerk, (2) retail marker, and (3) mail clerk. Next, the ALJ inquired:

> Q: If I change the limitation that [the individual] could stand or walk for only two hours in an eight-hour day, would that bring us down to sedentary?
> A: Yes.
> Q: And, I'm assuming he would continue to not have any transferrable skills at sedentary?
> A: Correct.

(Administrative Record at 52.)

### C. Ramaekers' Medical History

On January 3, 2011, Ramaekers was admitted to Trinity Regional Medical Center, in Fort Dodge, Iowa, for right leg pain. Upon admittance to the hospital, doctors found extensive swelling and redness in the right lower extremity. His D-dimer was elevated and an ultrasound showed "extensive" deep venous disease. He was diagnosed with DVT. Ramaekers was treated and discharged on January 6, 2011. He was able to move about and appeared to reach "maximum hospital benefit." He was prescribed an anti-coagulate for 5 days, and started on Coumadin, to be taken on a daily basis.

On February 13, 2012, at the request of Disability Determination Services ("DDS"), Ramaekers was referred to Dr. Alan D. Scher, M.D., for a consultative examination. Ramaekers told Dr. Scher that he was applying for disability benefits because "I am in pain."[3] In reviewing Ramaekers' medical complaints, Dr. Scher noted that Ramaekers' chief complaints included fatigue, headaches, leg pain, neck pain, arm and shoulder cramping, and depression. Specifically, Ramaekers reported that he has:

> headaches that start in the neck and occur three or four times a week. They started at the time of his neck surgery [in 2008]. They are occasionally accompanied by photophobia. The headaches can last from one hour to all day. [Ramaekers]

---

[3] Administrative Record at 464.

states when they occur he has to go lie down in the dark.
When he has a bad headache he states they are "10" on a scale
of one to 10. The less intense headaches are rated at "seven."
There is no nausea or vomiting with them.

(Administrative Record at 465.) With regard to Ramaekers' body pain, Dr. Scher noted

that:

[Ramaekers] has had neck problems for many years. . . . In
2008, the neck pain kept getting worse and he was unable to
grasp with his left hand because the pain radiated into the left
arm and the hand became numb. The pain at the time was
"10+" on a scale of one to 10. . . . He underwent a
fusion . . . and states now he cannot extend his neck without
getting dizzy and even that motion is minimal. Turning his
neck causes pain. He states the neck "always nags" and rates
the pain as between "one and two" on a good day and "10" on
a bad day. If he tries to be somewhat active his pain is a
"10. . . ." He no longer has the radiation or numbness into
the arm since the surgery. He does have decreased strength in
his left arm. He complains of cramping in the left shoulder
from simply moving the arm. He rates that pain at "10."
This cramping and pain lasts between 10 and 30 minutes and
the cramping extends from the shoulder to the arm. This can
occur if he bends his arm "the wrong way." [Ramaekers]
states his hands cramp with use and rates the pain as "5--it gets
your attention." He has occasional low back pain separate
from the above. This pain is between "seven and 10. . . ."
[Ramaekers] has constant pain in his right leg in the upper
third of his thigh and his groin. . . .

(Administrative Record at 465-66.)

Next, Dr. Scher asked Ramaekers about his functional abilities and limitations:

[Ramaekers] can sit for about 30 minutes and then states that
his neck hurts and he develops right leg pain. He can stand
for between 30 and 60 minutes but then has leg pain and groin
pain and has to sit down again and the cycle starts over
again. . . . He can lift up to 20 pounds but that causes neck
pain. He could carry an item 15 to 20 feet one time, not

8

> repetitively. [Ramaekers'] wife does the shopping and the
> laundry. . . . He has difficulty bending to pick things up. If
> he were to fall he would have difficulty getting up again. . . .
> [Ramaekers] sums it up by saying "almost any activity causes
> severe leg and back pain."

(Administrative Record at 466-67.)

Upon examination, Dr. Scher found that Ramaekers had "significant" restriction of cervical motion. He also found some restrictions with the lower pelvic girdle and lower extremities. Dr. Scher further found "significant" loss of grip strength in his left hand, and "some diminution" in his right hand. According to Dr. Scher, Ramaekers also demonstrated "decreased muscular strength in his left upper extremity as well as in his right lower extremity."[4] Dr. Scher diagnosed Ramaekers with: (1) status post operative cervical fusion with "significant" loss of range of motion of the neck and persistence of cervicalgia; (2) residual left upper extremity weakness secondary to prolonged cervical nerve compression preoperatively; (3) history of factor V deficiency; (4) leg pain and swelling secondary to deep venous thrombosis; and (5) chronic depression.

On March 6, 2012, at the request of DDS, Ramaekers was referred to Dr. James H. Chesnutt, Psy.D., for a psychodiagnostic mental status examination. Ramaekers reported having a blood clotting disorder and fused neck as his primary health concerns. Upon examination, Dr. Chesnutt diagnosed Ramaekers with mood disorder due to pain from fused neck. Dr. Chesnutt opined that Ramaekers is:

> able to remember and understand instructions, procedures and
> locations. He is able to maintain attention and concentration;
> however, he may have difficulty carrying out instructions that
> are physically demanding because of his fused neck. He is
> able to interact appropriately with supervisors, co-workers and
> the public. He is able to use good judgment and respond
> appropriately [to] changes in the work place.

---

[4] Administrative Record at 468.

(Administrative Record at 473-74.) Dr. Chesnutt concluded that:

> Joseph Ramaekers is a 51-year-old married male who has had no remarkable difficulties prior to his blood clot for which he takes Coumadin. He also has a fused neck which results in pain and discomfort especially when physically active. His condition seems to have truncated his ability to compete physically in the employment world. Because of this he suffers from some depression.

(Administrative Record at 474.)

On March 21, 2012, Dr. Stephen Elliot, D.O., reviewed Ramaekers' medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Ramaekers. Dr. Elliot determined that Ramaekers could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Elliot also determined that Ramaekers could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Elliot further indicated that Ramaekers should avoid concentrated exposure to vibration, and avoid hazards, such as working at heights or using machinery. Dr. Elliot found no manipulative, visual, or communicative limitations.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Ramaekers is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts

to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Ramaekers had not engaged in substantial gainful activity since January 3, 2011. At the second step, the ALJ concluded from the medical evidence that Ramaekers has the following severe impairments: status post fusion of the cervical spine and deep vein thrombosis of the lower right extremity. At the third step, the ALJ found that Ramaekers did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Ramaekers' RFC as follows:

> [Ramaekers] has the residual functional capacity to perform light work . . . except that [he] is limited to only occasionally climbing ramps and stairs, and should never climb ladders, ropes, or scaffolds. Only occasionally should [he] operate foot controls with the lower left extremity. [Ramaekers] should only occasionally balance, stoop, kneel, crouch, or crawl. He should avoid concentrated exposure to hazards, such as heights or dangerous machinery, as well as vibrations.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Ramaekers was unable to perform his past relevant work. At the fifth step, the ALJ

determined that based on his age, education, previous work experience, and RFC, Ramaekers could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Ramaekers was not disabled.

### B. Objections Raised By Claimant

Ramaekers argues that the ALJ erred in two respects. First, Ramaekers argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Second, Ramaekers argues that the ALJ's RFC assessment is flawed because it is not based on substantial evidence from a treating or examining physician.

### 1. Credibility Determination

Ramaekers argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Ramaekers maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Ramaekers' testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical

evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Ramaekers' credibility as follows:

On the whole, the undersigned finds that the evidence indicates [Ramaekers has] no problems with personal care, is capable of preparing meals, and performing house and yard work. Further, [Ramaekers] is able to get around town on his own, and handle shopping responsibilities and financial matters, as such needs may arise. (Ex. 6E, 13E). [Ramaekers] spends a lot of time on the computer. These activities of daily living are inconsistent with total disability.

[Ramaekers] is prescribed medications appropriate to his conditions, which successfully treat his conditions without materially adverse side effects (allegations of "bruising, bleed easier" noted). Moreover, [Ramaekers] has not required long-term intensive treatment for any of his conditions. Of note, [Ramaekers] had been advised to get an x-ray of his hip, yet he has failed to follow up in a timely fashion, which indicates that his symptoms may have not been as severe as alleged. Also, [Ramaekers] uses a cane, but it does not appear to be prescribed or medically necessary. Lastly, a review of [Ramaekers'] work history shows that [he] only quit his last job because his family moved for his wife's job, which raises questions as to whether [his] continuing unemployment is actually due to medical impairments. . . .

In sum, although [Ramaekers] described disabling symptoms as a result of his medical impairments, the record is not consistent with those allegations. The above residual functional capacity assessment is supported by the objective medical evidence, the medical opinions when afforded appropriate weight, and [Ramaekers'] subjective complaints during the relevant period when taken in proper context. In view of all of the factors discussed above, the limitations on [Ramaekers'] capacities which were described earlier in this decision are considered warranted, but no greater or additional limitations are justified.

(Administrative Record at 20-22.)

In her decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[5] The ALJ also addressed some of the *Polaski* factors and explained her reasoning for finding Ramaekers' subjective allegations of disability less than credible.[6] Under such circumstances, the Court would normally affirm the ALJ's credibility determination. The Court is reluctant to affirm the ALJ's credibility determination in this instance, however, because the ALJ's decision lacks full consideration of the entire record. For example, in the area of activities of daily living, the ALJ determined that Ramaekers is "capable of preparing meals, and performing house and yard work." However, in his Function Reports for the Social Security Administration, Ramaekers stated that he only makes simple lunches, like cooking a frozen pizza, and does no other cooking.[7] Nowhere in the record does Ramaekers indicate that he is capable of performing any type of housework. As for yard work, Ramaekers stated that he mows the law incrementally with breaks on a riding lawnmower due to cramping and neck pain.[8] Similarly, while Ramaekers indicated that he was capable of driving, he stated that he could only drive short distances, and generally lets his wife drive him places.[9] He further stated that he does no shopping on his own, and if he goes shopping with his wife, he stays in the car while she goes into the store.[10] The Court believes that Ramaekers' ability "to engage in some life activities, however, does not support a finding

---

[5] *See* Administrative Record at 17-18.

[6] *Id.* at 20-22.

[7] *See* Administrative Record at 207.

[8] *Id.* at 254.

[9] *Id.* at 208.

[10] *Id.* at 208; 255.

that [he] retains the ability to work." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004).

As for Ramaekers' use of medication, he claims that he is unable to use pain medication due to his blood-thinning medication used to treat DVT. While the ALJ points to one treatment note where the medical source stated Ramaekers was using prescribed pain medication, there is no indication of who, when, or why the pain medication was prescribed, or whether it was helpful in treating Ramaekers' pain. Furthermore, in other treatment notes in the record, where Ramaekers complains about pain, there is no indication that he was prescribed pain medication or recommended to use pain medication. Instead, his medication for DVT was adjusted, presumably to help treat his leg pain.

Turning to the objective medical evidence, overall, there is little medical evidence in the record. The only examining physician, Dr. Scher, found that Ramaekers had "significant" restriction of cervical motion. He also had some restrictions in the lower pelvic girdle and lower extremities. Dr. Scher also found "significant" loss of grip strength in his left hand, and "some diminution" in his right hand. Ramaekers also demonstrated "decreased muscular strength in his left upper extremity as well as in his right lower extremity."[11] Dr. Scher diagnosed Ramaekers with: (1) status post operative cervical fusion with "significant" loss of range of motion of the neck and persistence of cervicalgia; (2) residual left upper extremity weakness secondary to prolonged cervical nerve compression preoperatively; (3) history of factor V deficiency; and (4) leg pain and swelling secondary to deep venous thrombosis. In evaluating Dr. Scher's opinions, the ALJ granted little weight because "the findings are simply not consistent with previous orthopedic exams, and there is little objective medical evidence that would indicate worsening of [Ramaekers'] condition. In fact, most objective evidence . . . indicates

---

[11] Administrative Record at 468.

normal findings. (Ex. 12F)."[12] The Court finds two problems with the ALJ's rejection of Dr. Scher's opinions. First, the ALJ does not address the orthopedic exams or objective medical evidence that are allegedly inconsistent with Dr. Scher's opinions. Second, the record the ALJ cites in her decision, 12F, is Dr. Scher's opinion, not objective medical evidence indicating normal findings that are inconsistent with Dr. Scher's opinions. Moreover, after his hospitalization in January 2011 where he was diagnosed with DVT, the medical evidence in the record demonstrates that Ramaekers consistently sought medical treatment for leg, back, and neck pain and issues with muscle cramping.[13] Thus, the Court is unpersuaded that the ALJ fully and fairly developed the record to support a discounting of Ramaekers' subjective allegations based on the objective medical evidence.

Lastly, as Ramaekers points out in his brief, prior to his DVT diagnosis in January 2011, he had a strong work history. *See Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir. 1984) ("'A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.' *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)."). While the ALJ points out that Ramaekers ended his last job because his family moved, the ALJ fails to address or consider Ramaekers' testimony that following his move he performed repair work on his new house and intended to seek work as a machinist in his new location, but the DVT diagnosis "put everything on hold. It stopped me in my tracks."[14] Given Ramaekers' strong work history from 1995 to 2010, and plausible explanation for not seeking work immediately after relocating for his wife's

---

[12] *Id.* at 20.

[13] *Id.* at 384 (leg pain in February 2011); 386 (leg pain and muscle cramping due to prolonged sitting, walking, standing, and physical activity in November 2011); 492 (left-side leg and back pain in November 2012); 508 (right leg pain and muscle cramping in August 2012); 514 (leg and arm cramping in April 2012).

[14] Administrative Record at 35.

job, the Court is unpersuaded by the ALJ's reasoning for disregarding Ramaekers' credibility based on his work history.[15] *See Nunn*, 732 F.2d at 648.

In conclusion, the Court believes that the ALJ failed to fully and fairly develop the record with regard to Ramaekers' credibility, including the opinions of his examining physician and the objective medical evidence as a whole. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ has a duty to develop the record fully and fairly). Moreover, by failing to fully and fairly develop the record in this matter, the ALJ's reasons for discounting Ramaekers' testimony are not supported by inconsistencies with the record as a whole. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). Therefore, the Court recommends that this matter be remanded for further development of Ramaekers' credibility determination.

## 2. *RFC Assessment*

Ramaekers argues that the ALJ's RFC assessment is flawed. Specifically, Ramaekers argues that the ALJ's RFC assessment is not supported by substantial evidence from a treating or examining physician. Ramaekers concludes that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment

---

[15] *See id.* at 169.

must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In sections *V.B.1*, the Court recommended that remand was necessary because the ALJ failed to fully and fairly develop the record with regard to Ramaekers' subjective allegations of pain and disability. The Court also addressed the need for the ALJ on remand to fully and fairly develop the record with regard to the objective medical evidence as a whole, including the opinions of Dr. Scher, the sole examining physician in this matter. Because the ALJ did not fully and fairly develop the record with regard to the

objective medical evidence, and failed to properly determine Ramaekers' credibility, the Court finds that the ALJ's RFC assessment is not based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803. Accordingly, the Court recommends that remand is necessary in order that the ALJ make her RFC assessment for Ramaekers based on all the relevant evidence, including the opinions of Dr. Scher, and Ramaekers' own testimony of pain and disability.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to: (1) Ramaekers' subjective allegations of pain and disability, (2) the objective medical evidence in the record as a whole, including the opinions of Dr. Scher; and

(3) base her determination of Ramaekers' RFC on all of the relevant evidence. Accordingly, the Court recommends that this matter be remanded to the ALJ for further consideration.

## VI. CONCLUSION

The Court recommends that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ should consider all of the evidence relating to Ramaekers' subjective allegations of disability, including the objective medical evidence and the opinions of Dr. Scher, an examining source. The ALJ should address her reasons for crediting or discrediting those allegations, particularly in light of her further consideration of the medical evidence in the record. Furthermore, the ALJ should make her RFC determination based on all the relevant evidence, again, including the opinions of Dr. Scher, the objective medical evidence, and Ramaekers' own testimony of his pain and disability. Accordingly, I believe that this matter should be remanded for further proceedings as discussed herein.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this _12th_ day of November, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA